## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Ole Savior and Peter Idusogie,                    **Civil No. 10-cv-4483**

                    Plaintiffs,

vs.                                          **MEMORANDUM IN SUPPORT OF**
                                             **MOTION TO DISMISS**

The Minneapolis Star Tribune, et al.,

                    Defendants.

### <u>Introduction</u>

In this action, *pro se* plaintiffs Ole Savior and Peter Idusogie, unsuccessful

candidates for governor in Minnesota's 2010 primary election, blame their failure on "the

illegal actions of censorship and exclusion on the part of the press to some how

marginalize their campaign" through allegedly "illegal activities … that violated [their]

first, and ninth amendment constitutional rights and civil rights."  (Docket #1, Complaint,

p.1.)

Both Savior and Idusogie have commenced previous litigation after losing bids for

elective office in Minnesota, sometimes against the same organizations they have named

as defendants in the present case.  Like such prior litigation, the present lawsuit has no

merit and should be rebuffed at an early stage.

Accordingly, Minnesota Public Radio, Multimedia Holdings Corporation, and Star

Tribune Media Company LLC now move pursuant to Fed. R. Civ. Proc. 12(b) for an

order dismissing the complaint without prejudice for lack of subject-matter jurisdiction,

for failure to state a claim upon which relief can be granted, and for insufficiency of

process/insufficiency of service of process.  They also seek an order enjoining Plaintiffs from commencing future such *pro se* lawsuits.

## Description of the Moving Defendants

The Complaint designates "KARE 11 News" as a defendant.  Multimedia Holdings Corporation, a Florida corporation, owns and operates television station KARE-TV.

The Complaint designates "The Minneapolis Star Tribune" as a defendant.  Star Tribune Media Company LLC publishes the *Star Tribune* newspaper.

The Complaint designates "Minnesota Public Radio (M.P.R.)" as a defendant.  Minnesota Public Radio® ("MPR") produces programming for radio, Internet and face-to-face audiences.

## Factual Background

Both Ole Savior and Peter Idusogie initially sought and failed to gain the 2010 Democratic-Farmer-Labor party endorsement for governor of Minnesota.  Ultimately, Savior ran for governor in the Republican primary election on August 10, 2010, while Idusogie ran in the DFL primary.  Each now blames the news media for his own dismally distant last-place finish in their respective four-candidate elections.  (Minnesota Secretary of State election results, copy attached as Exhibit A and available at http://electionresults.sos.state.mn.us/20100810/ElecRslts.asp?M=S&Races=0331.)

Charitably construing the allegations of the Complaint, it appears that Plaintiffs assert that the Defendants generally violated their "constitutional rights and civil rights" by:

- Engaging in a "politics of omission" (Complaint, p. 5) by not interviewing Plaintiffs or including them in news coverage (*see generally* Complaint, pp. 2, 4–7);[1]

- Failing to include Plaintiffs in candidate debates sponsored by KSTP-TV/Channel 5 (Complaint, p. 3), Minnesota Public Radio (Complaint, pp. 7, 8), and the League of Women Voters and the Humphrey Institute (Complaint, p. 5);[2]

- Not "treating all candidates fairly" and breaking promises to "the Minnesota News Council State Agency" that they would do so (Complaint, p. 5);[3]

---

[1]      Both Plaintiffs were mentioned in some news coverage.  Pursuant to Rule 201 of the Federal Rules of Evidence, this Court can take judicial notice of the publicly accessible coverage attached hereto as Exhibits B through BB.  *See, e.g.*, *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010) ("Courts may take judicial notice of publications introduced to 'indicate what was in the public realm at the time, not whether the contents of those articles were in fact true.'" (quoting *Premier Growth Fund v. Alliance Capital Mgmt.*, 435 F.3d 396, 401 n.15 (3d Cir.2006))); *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*,  289 F. Supp. 2d 416, 425 n.15 (S.D.N.Y. 2003) ("The Court may take judicial notice of newspaper articles for the fact of their publication without transforming the motion into one for summary judgment.").

[2]      Not all Defendants sponsored candidate debates.  Presumably, these allegations in the Complaint relate only to the named Defendants who are identified as sponsors of a specified debate.

[3]      This presumably refers to the Minnesota News Council, a non-profit organization that is not part of any government entity.  *See* http://news-council.org/.  The Complaint does not identify what Defendants made such a "promise."

- "Unduly influencing" and "tainting" the August primary election to such an extent that the election must be nullified and conducted again at the expense of "the press and the Secretary of State office" (Complaint, pp. 10, 12–13).

These Plaintiffs have sued and lost before when they were unhappy with the attention they received in their prior bids for public office.  For example:

- After his unsuccessful gubernatorial race in 1998:

    o Savior filed an election contest in Ramsey County District Court on November 10, 1998, apparently challenging the results of the September 15, 1998, primary election and of the November 3, 1998, general election based on alleged violations of the Minnesota Fair Campaign Practices Act by Jesse Ventura and Dean Barkley.  The district court dismissed the contest as an untimely challenge to the primary election. The Minnesota Supreme Court denied review because Savior had not complied with the strict statutory requirements for an election contest. *Savior v. Ventura*, 1999 Minn. LEXIS 217 (Minn. April 1, 1999) (copy attached as Exhibit CC), *cert. denied*, 528 U.S. 938 (1999).

    o Savior filed a complaint in Minnesota state court for damages under the Minnesota Fair Campaign Practices Act against *Star Tribune* editor Timothy J. McGuire and against Hubert H. Humphrey III (later dismissed as a defendant, before court motion).  Savior alleged that the newspaper deliberately did not state Savior's views to the voters because of its supposed "favoritism" to Humphrey.  The courts rejected

Savior's claims for failure to state a justiciable claim under the state statute and because the First Amendment protected the editorial choice of the newspaper to limit coverage of his candidacy. *Savior v. Humphrey*, 1999 WL 1059667, 1999 Minn. App. LEXIS 1233 (Minn. App. November 23, 1999) (unpublished) (copy attached as Exhibit DD), *rev. denied*, 2000 Minn. LEXIS 3(Minn. January 18, 2000), *cert. denied*, 530 U.S. 1279 (June 29, 2000).

o   Savior also filed suit in Minnesota federal court against persons associated with the successful 1998 gubernatorial candidate Jesse Ventura and against the Ramsey County Attorney, alleging election fraud, failure to investigate charges of election misconduct, and unspecified violations of his federal and state constitutional rights.  The court dismissed with prejudice Savior's  claims premised on the United States Constitution and dismissed the remaining claims without prejudice. *Savior v. Gaertner*,  2001 WL 1589613, 2001 U.S. Dist. LEXIS 20688 (D. Minn. Dec. 11, 2001) (Frank, J.) (copy attached as Exhibit EE), *aff'd*, 45 Fed. Appx. 560, 2002 U.S. App. LEXIS 19137 (8th Cir. Sept. 16, 2002).

• After his unsuccessful gubernatorial race in 2002, Savior:

o   Filed a lawsuit in Minnesota federal court against the Star Tribune and individual employees, including its publisher, editor, managing editor, editorial page editor, and political reporter.  He alleged in essence that

the newspaper unfairly excluded him from its political coverage.  To the extent that he based his claim on an alleged violation of his First Amendment rights, the court dismissed Savior's claims with prejudice on grounds that the defendants were not State actors and that the First Amendment protected a newspaper's right to exercise editorial control over the content of its political coverage, including which candidates to cover and how much coverage to give a particular candidate.  The court also dismissed his remaining claims without prejudice, for lack of subject-matter jurisdiction.  *Savior v. McGuire*, 2002 WL 1906023, 2002 U.S. Dist. LEXIS 15483, 30 Media L. Rep. 2336 (D. Minn. August 15, 2002) (Kyle, J.) (copy attached as Exhibit FF), *aff'd*, 2003 U.S. App. LEXIS 7497 (8th Cir. April 22, 2003), *cert. denied*, 541 U.S. 1034 (2004).

o  Filed a separate suit in Minnesota federal court against the DFL Party and associated party officers and candidates, alleging that his campaign was hurt by a DFL fundraising letter sent after the party convention that stated the party "will not have a primary" for governor.  The court dismissed the complaint for lack of subject-matter jurisdiction and for failure to state a claim upon which relief could be granted in federal court.  *Savior v. Erlandson*, 2002 U.S. Dist. LEXIS 20964 (D. Minn. October 29, 2002) (Davis, J.) (copy attached as Exhibit GG).

- After Minnesota Secretary of State Mary Kiffmeyer notified Idusogie by letter dated July 21, 2006, that his nominating petition for the office of United States Senator from Minnesota lacked the number of signatures "required by law," Idusogie filed a petition with the Minnesota Supreme Court requesting an order that the secretary place his name on the primary election ballot and on the general election ballot.  The court denied his petition because Idusogie had not followed the proper statutory procedure for his nominating petition and because he had failed to articulate a colorable claim that his First Amendment right of association had been violated.  *Idusogie v. Kiffmeyer*, 721 N.W.2d 283 (Minn. 2006).

In short, this lawsuit involves plaintiffs who are as persistent in unsuccessful litigation as they are in unsuccessful political campaigns.

## <u>Argument</u>

The Court should grant these Defendants' motion to dismiss for lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1) and for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6).  Although they are not represented by counsel, Plaintiffs should be familiar with the well-established principles that mandate dismissal.  As recounted above, courts have applied those principles to dismiss these Plaintiffs' own similar claims in past cases.  The Court also should dismiss the Complaint for insufficiency of process/insufficiency of service of process under Fed. R. Civ. P. 12(b)(4) and (5).

Finally, the Court should exercise its inherent power to enjoin Plaintiffs from filing any other lawsuits that relate to the Moving Defendants' alleged failure to include the Plaintiffs in political coverage or debates conducted by the Moving Defendants in connection with any past or future election, unless Plaintiffs are represented by counsel who will ensure (subject to Rule 11 penalties) that any claims presented in such a lawsuit has evidentiary support and is warranted by existing law or by a non-frivolous argument for extending, modifying, or reversing existing law or for establishing new law.

**I.    This Court Lacks Subject Matter Jurisdiction over Plaintiffs' Claims.**

Federal courts are courts of limited jurisdiction, and subject matter jurisdiction is a threshold matter that must be established.  *Godfrey v. Pulitzer Publ'g Co.*, 161 F.3d 1137 (8th Cir. 1998).  If challenged, "the burden of proof as to the existence of federal jurisdiction is on the party that claims that jurisdiction exists."  *Bilal v. Kaplan*, 904 F.2d 14, 15 (8th Cir. 1990).

Plaintiffs contend that a federal question provides the basis for federal court jurisdiction.  However, they fail utterly and completely to explain *how* any defendant violated their constitutional rights or unspecified civil rights under federal law.  As this Court has explained on at least three occasions *when Savior was a party*, "a bald assertion is insufficient to raise a federal question and to vest the Court with subject matter jurisdiction."  *Savior v. Erlandson*, 2002 U.S. Dist. LEXIS 20964 at *4 (Davis, J.); *Savior v. Gaertner*, 2001 U.S. Dist. LEXIS 20688, 2001 WL 1589613 at *4 (Frank, J.); *Savior v. McGuire*, 2002 U.S. Dist. LEXIS 15483, 2002 WL 1906023 at *6 (Kyle, J.).

This Court should dismiss the Complaint for lack of subject matter jurisdiction.

**II.      The Complaint Fails to State a Claim upon which Relief Can be Granted.**

In considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), this Court

must take as true the allegations contained in the Complaint.  *Cooper v. Pate*, 378 U.S.

546 (1964).  It must view the complaint in the light most favorable to the plaintiff.  *Fusco*

*v. Xerox Corp.*, 676 F.2d 332, 334 (8th Cir. 1982).  Nevertheless, it may dismiss a case

under Rule 12(b)(6) if it is clear that no relief could be granted under any set of facts that

could be proved consistent with the allegations.  *Hishon v. King & Spalding*, 467 U.S. 67,

73 (1984).  Under that standard, this Court should dismiss the present Complaint as

against the Moving Defendants, just as this Court and other courts have dismissed

Savior's previous complaints that contained similarly broad and legally insufficient

allegations.

**A.      Plaintiffs cannot force news organizations to cover their campaign activities.**

Plaintiffs contend that the Moving Defendants did not pay enough attention to

their political campaigns and positions and thereby hampered Plaintiffs' efforts to convey

their messages to the public in general and to Minnesota voters in particular.  The

Moving Defendants believe that they did provide appropriate coverage of these

perennially peripheral political candidates.  This Court need not, and indeed must not,

insert itself into that dispute.

The First Amendment to the U.S. Constitution protects a news organization's exercise

of editorial judgment concerning discussion of political candidates.  Article 1, Section 3 of

the Minnesota Constitution also protects such editorial judgments.  The state constitution

extends free speech protections at least equally with the First Amendment.  *See State v.*

*Wicklund*, 589 N.W.2d 793, 798–801 (Minn. 1999).  The alleged statements and editorial

decisions by the Moving Defendants cannot form the basis for any liability to Plaintiff.

Plaintiffs allege that the Moving Defendants deliberately excluded Plaintiff's views

from publication in their newspaper articles and broadcasts during Plaintiffs' campaigns for

the nomination for Minnesota governor.  It is well-settled that the First Amendment protects

the right of a newspaper and its editors to undertake precisely the course of conduct alleged

by Plaintiffs.

> [T]here is practically universal agreement that a major purpose of [the First]
> Amendment was to protect the free discussion of governmental affairs.  *This of*
> *course includes discussions of candidates* ... .

*Mills v. Alabama*, 384 U.S. 214, 218 (1966) (emphasis added).

> The choice of material to go into a newspaper, and the decisions made as to
> limitations on the size and content of the paper, and *treatment of public issues*
> *and public officials* — whether fair or unfair — constitute the exercise of
> editorial control and judgment.  It has yet to be demonstrated how
> governmental regulation of this crucial process can be exercised consistent
> with First Amendment guarantees of a free press as they have evolved to this
> time.

*Miami Herald Publ'g Co. v. Tornillo*, 418 U.S. 241, 258 (1974) (emphasis added).  In

*Tornillo*, the Court held unconstitutional a Florida statute that required newspapers to print

"replies" by political candidates to editorial positions and reporting in newspapers.  Under

the First Amendment, the state could no more compel a newspaper to publish than the state

could censor newspaper content by telling it what not to print.  The First Amendment

prohibits any such "intrusion into the function of editors."  *Id.* at 258.  Subsequent cases have

emphasized that the right to choose what *not* to say is a central component of the right of free

speech.  *See Hurley v. Irish-Am. Gay Group*, 515 U.S. 557, 573 (1995) (parade organizers

could exclude group that wished to propound a point of view with which the organizers disagreed).

In the present case, Plaintiffs seek to enlist this Court as an instrument of governmental regulation of newspaper, radio, and television content.  Even assuming for adjudication of the Rule 12 motion that Plaintiffs' allegations are true, the First Amendment protects the right of any news organization and its editors to deliberately exclude a political candidate's views from publication during a campaign.  Protecting a news organization's right to express its own political views is "a major purpose" of the First Amendment.  A news organization's right to make its own decisions whether and how to treat public issues and public officials is a "crucial process" protected by the First Amendment.

The conduct alleged by Plaintiffs is fully protected by the First Amendment and the Minnesota Constitution.  As *Tornillo* makes clear, constitutional guarantees of freedom of the press bar any state statute or other government regulation from imposing a requirement that news organizations and their editors publish any particular political candidate's views, and they protect the expression by news organizations and their editors of views on candidates for political office.

This Court should dismiss the Complaint as against the Moving Defendants for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6), because the state and federal constitutions protect journalists from Plaintiffs' claims.

**B.      Plaintiffs have no cognizable legal claim based upon alleged "promises" to the Minnesota News Council.**

Plaintiffs contend that unspecified members of the news media "violated and broke" promises allegedly made to the Minnesota News Council in 1998 to "abide by the

laws of the land of Minnesota by treating all candidates fairly." (Complaint, p. 5.) This aspect of the Complaint fails to state a claim upon which relief can be granted.

The mere reference to a broken "promise" does not amount to a claim for breach of contract under Minnesota. Minnesota law does not "consider binding every exchange of promises." *Cohen v. Cowles Media Co.*, 457 N.W.2d 199, 203 (Minn. 1990). An enforceable contract requires, among other things, that both the plaintiff and the defendant be parties to the contract. *See, e.g.*, *Veerkamp v. Farmers Co-op. Creamery*, 573 N.W.2d 715, 717 (Minn. App. 1998) ("Only a party to a contract may move to enforce it."); *Wurm v. John Deere Leasing Co.*, 405 N.W.2d 484, 486 (Minn. App. 1987) ("Under Minnesota law, strangers to a contract acquire no rights under the contract."); *see also In re Welfare of M.R.H.*, 716 N.W.2d 349, 352 (Minn. App. 2006) ("Generally, 'nonparties to a contract acquire no rights or obligations under it.'" (quoting *Mon-Ray, Inc. v. Granite Re, Inc.*, 677 N.W.2d 434, 439 (Minn. App. 2004))). Plaintiffs allege that "the media" made and broke a promise to the Minnesota News Council, *not* to the Plaintiffs themselves.

Minnesota law also requires that the contract be supported by bargained-for consideration. *Franklin v. Carpenter*, 244 N.W.2d 492, 495 (Minn. 1976) ("When there is a lack of consideration, no valid contract is ever formed."); *Chalmers v. Kanawyer*, 544 N.W.2d 795, 798 (Minn.App. 1996) (same); *Sirany v. Cowles Media Co.*, 20 Media L. Rep. 1759, 1760 (Minn. Dist. Ct., 4th Dist., September 5, 1992) (copy attached as Exhibit HH) ("Basically, consideration is to an enforceable contract what the orange orb is to basketball—without it you just don't have a real game.").

Nor does the Complaint state a claim for "promissory estoppel" under *Cohen v. Cowles Media*, 457 N.W.2d at 203–05, *sub. op.*, 479 N.W.2d 387, 391.  Here, too, both the promisor and the promisee must be parties to the lawsuit, *id.*, which is not the situation here.  The promise must have been expected to induce definite action by the promisee and must actually have produced such definite action by the promisee.  *Id.*  The Complaint makes no such allegation.  Finally, application of promissory estoppel is appropriate only where "injustice can be avoided only by enforcing the promise."  *Id.*  As discussed above, government cannot interfere with the editorial decisions of news organizations regarding the extent of coverage of political candidates.  "There is little injustice in not enforcing a promise which the promisee could not enforce to begin with." *Sirany*, 20 Media L. Rep. at 1761.

The allegations of the Complaint regarding a "promise" to the Minnesota News Council fail to state a claim upon which relief can be granted.

**C.    Plaintiffs cannot compel a news organization to include them in a sponsored political debate.**

Plaintiffs contend some of the named defendants acted illegally in excluding them from debates hosted by Channel 5 (Complaint, p. 3), the League of Women Voters (*id.* at 3, 5), the Humphrey Institute (Complaint, p. 5), and Minnesota Public Radio (*id.* at 7-8).  These allegations do not relate to defendants who are not identified as debate hosts.

Even as to a debate host such as MPR, the Complaint fails to state claim upon which relief can be granted.  Even publicly owned television stations—whose freedom of expression is limited in comparison to privately owned publishers or broadcasters—can

exclude particular political candidates from the nonpublic forum of candidate debates, where the decision to exclude is "a reasonable, viewpoint-neutral exercise of journalistic discretion consistent with the First Amendment." *Arkansas Educ. Television Comm'n v. Forbes*, 523 U.S. 666, 683 (1998); *see also Marcus v. Iowa Pub. Television*, 150 F.3d 924, 925 (8th Cir. 1998). MPR, of course, is not owned by any government entity and therefore has even greater journalistic discretion than that available to the public broadcaster in *Forbes*. It had no obligation to include Plaintiffs in any debate.

In 2002, Independence Party senatorial nominee James Moore, a far more substantial candidate than Savior or Idusogie, sought to insert himself into a political debate between Norm Coleman and Walter Mondale co-sponsored by MPR and KARE-11 on the day before the general election. Ramsey County District Court Judge M. Michael Monahan rebuffed that attempt, stating:

> There are numerous cases from across the nation dealing with situations similar to this case. The courts have almost universally declined to require private broadcasters to include specific candidates for office in debates the broadcasters were sponsoring.

*Moore v. Minn. Pub. Radio*, No. C2-02-010548, slip op. at 7 (Minn. Dist. Ct., 2d Dist., November 8, 2002) (copy attached as Exhibit II).

Plaintiffs' references to violations of "F.C.C. rules and regulations" make no difference. Even construing these references as invoking the "equal time" provision of 47 U.S.C. §315(a) of the Communications Act of 1934, there is no private cause of action under Section 315(a). *Forbes v. Arkansas Educ. Television Commc'n Network Found.*, 22 F.3d 1423, 1427 (8th Cir. 1994) ("There is no private cause of action to enforce 47 U.S.C. §315."), *rev'd on other grounds*, 523 U.S. 666 (1998); *see also Belluso v. Turner Commc'ns*

*Corp.*, 633 F.2d 393, 397 (5th Cir. 1980); *Sagan v. Penn. Pub. Television Network*, 544 A.2d 1309, 1312–13 (Pa. 1988), *cert. denied*, 488 U.S. 998 (1989).  The FCC considers candidate debates to fall within the "on-the-spot coverage of bona fide news events" exemption provided in §315(a)(4) and, absent evidence of the broadcaster's intent to advance a particular candidacy, leaves the selection of debate participants to the reasonable journalistic judgment of the presenter.  *King Broad.*, 6 FCC Rcd 4998, 4999 (1991).

Plaintiffs' complaints about being excluding from hosted broadcast debates are barred by the state and federal constitutions and fail to state a claim upon which relief can be granted.

**D.      Plaintiffs cannot obtain a new primary election, much less compel the news media to pay for such an election.**

Plaintiffs contend  that the defendants "possibly unduly influenced the August primary election to suit their own political agendas" (Complaint, p. 10), and that "as a result of their actions the [primary] election was fraudulently tainted" (*id.* at 12) so that this Court should "nullify the results of the primary election by declaring it null and void and subsequently, throw out the results of the August 10th Primary race" (*id.*) and require the press and the Secretary of State to bear the cost of a new primary election (*id.* at 13). This audacious demand has no merit.

First, Minnesota law does not provide for any private cause of action by a disappointed political candidate against the news media for alleged interference with an election.  *Derus v. Higgins*, 555 N.W.2d 515, 517 (Minn. 1996); *Savior v. Humphrey*, 1999 Minn. App. LEXIS 1233, at *3.

Second, any challenge concerning a primary election must be brought within five days after the canvass for the primary is completed. *Savior v. Ventura*, 1999 Minn. LEXIS 217 at *2–3 (Minn., April 1, 1999); *see also* Minn. Stat. §209.021, subd. 1 (2008). These Plaintiffs not only failed to file within that deadline, they filed this action in federal rather than state court after the general election that followed the primary election that they now challenge.  The Minnesota Supreme Court "has long held that since the right to contest an election and the authority of the courts to hear and determine election contests are purely statutory, absent strict compliance with the statutory requirements, the courts are powerless to entertain such contests or appeals therefrom." *Savior v. Ventura*, *id.* at *5 (citing *Schmitt v. McLaughlin*, 275 N.W.2d 587 (Minn. 1979)).

Plaintiffs cannot obtain a new primary election, much less compel the news media to pay for such an election.

## III.   Plaintiffs Failed to Make Effective Service of Process.

Because Plaintiffs failed to obtain effective service of process upon one or more of the Moving Defendants, the Court also might dismiss the Complaint for insufficiency of process/insufficiency of service of process under Fed. R. Civ. P. 12(b)(4) or (5).  The Moving Defendants acknowledge that because the Court should dismiss for other reasons, the Court might choose not to address that basis for dismissal. *Cf. Savior v. McGuire*, 2002 U.S. Dist. LEXIS 15483 at *4, n.2.

Plaintiffs bear the burden of establishing that they secured effective personal service. *Northrup King Co. v. Compania Productora Semillas Algodoneras Selectas*, 51 F.3d 1383, 1387 (8th Cir. 1995).  Actual notice of a lawsuit will not subject a defendant

to personal jurisdiction unless the plaintiff substantially complied with service of process. *Sieg v. Karnes*, 693 F.2d 803, 807 (1982) (finding that court lacked personal jurisdiction over improperly served defendant despite actual notice); *Tullis v. Federated Mut. Ins. Co.*, 570 N.W.2d 309, 311 (Minn. 1997); *Smith v. Flotterud*, 716 N.W.2d 378, 382–83 (Minn. App. 2006).  A plaintiff's status as a *pro se* litigant, along with his good faith attempts to comply with the Rules, will not excuse him from adhering to the procedural requirements for service of process.  *Applewhite-Bey v. Tripoli*, 2005 U.S. Dist. LEXIS 44981, *11 (D. Minn. August 3, 2005) (copy attached as Exhibit JJ), *recommendation adopted*, 2005 U.S. Dist. LEXIS 44980 (D. Minn. August 18, 2005) (copy attached as Exhibit KK).

Defendants Star Tribune and MPR received copies of the summons and complaint when someone left them with a shipping/receiving employee (Star Tribune) and front desk receptionist (MPR) at their respective offices.  (Docket #3.)  This is not effective service of process upon an "authorized agent" under Rule 4.  *Redding v. Hanlon*, 2008 U.S. Dist. LEXIS 109746, *20–25 (D. Minn. February 15, 2008) (copy attached as Exhibit LL), *recommendation adopted*, 2008 U.S. Dist. LEXIS 21793 (D. Minn. March 19, 2008) (copy attached as Exhibit MM); *Tullis*, 570 N.W.2d at 311 ("[P]ersons in the positions of administrative assistant, staff counselor at a halfway house, and office receptionist all have been found to lack the power to exercise independent judgment and discretion on behalf of the corporation."); *Thiele v. Stich*, 425 N.W.2d 580, 584 (Minn. 1988) (concluding that service on a receptionist at defendant's place of business was

ineffective because it did not substantially comply with Rule 4, even though defendant received actual notice).

MPR and Multimedia Holdings (KARE-TV) also received a copy of the summons and complaint in the mail, but without the forms necessary to satisfy even the requirements for a request for waiver of service under Rule 4(d).  This, too, is ineffective service of process.  *Applewhite-Bey*, 2005 U.S. Dist. LEXIS 44981, *4-12.

Accordingly, Plaintiffs have not properly served the Moving Defendants with process and the Court should dismiss this action as against them for insufficiency of service of process.

**IV.   This Court Should Enjoin Plaintiffs from Filing any Other Lawsuits that Relate to the Moving Defendants' Alleged Failure to Include the Plaintiffs in Political Coverage or Debates Conducted by the Moving Defendants in Connection with any Past or Future Election, Unless Plaintiffs are Represented by Counsel.**

No matter how passionately or sincerely Plaintiffs Idusogie and Savior may believe that their political campaigns deserved more attention from the media, their repeated misguided and meritless lawsuits have imposed unjustified costs on the state and federal courts as well as upon the Moving Defendants.  The time has come to restrict those lawsuits and to limit such burdens.

In 2005, this Court enjoined two *pro se* plaintiffs from commencing litigation in this or any other court based upon certain specified activity, unless the plaintiffs were represented by counsel who could ensure that their claims were presented coherently and according to applicable rules and that any representation to or request of the Court rested on sound legal grounds, so that neither the Court's nor the parties' time and resources

-18-

would be unnecessarily wasted.  *Sieverding v. Faegre & Benson, LLP*, 2005 WL 1431577 (D. Minn. May 23, 2005) (Tunheim, J.), *aff'd*, (8th Cir. August 8, 2005) (copy attached as Exhibit NN); *see also Zhang v. Equity Office Properties Trust*,  2007 WL 26324, *11 (D. Minn. Jan. 3, 2007) (Davis, J.) (copy attached as Exhibit OO) (stating that "[a]n injunction is an appropriate sanction when a plaintiff has frivolously litigated the same issues three times before" and that an injunction is also "appropriate under the Court's inherent power and duty to protect litigants from harassing, repeat litigation"); *Nelson v. Butler*, 929 F. Supp. 1252 (D. Minn. 1996) (Davis, J.) (enjoining husband from commencing further action against defendants for same claims).

These district court decisions rest on clear Eighth Circuit precedent holding that "[t]here is 'no constitutional right of access to the courts to prosecute an action that is frivolous or malicious.'"  *In re Tyler*, 839 F.2d 1290, 1292 (8th Cir. 1988) (quoting *Phillips v. Carey*, 638 F.2d 207, 208 (10th Cir. 1981)); *accord Winslow v. Hunter*, 17 F.3d 314, 315 (10th Cir. 1994).  Further, the "'Court has authority to control and manage matters pending before it,'" *In re Tyler*, 839 F.2d at 1292 (quoting *State of Colorado v. Carter*, 678 F.Supp. 1484, 1486 (D. Colo. 1986), and it should not hesitate to exercise that authority where frivolous litigation threatens to bog down its docket.  As the Eighth Circuit has recognized,

> "[J]udicial resources are limited in the short run and need to be protected from wasteful consumption. Frivolous, bad faith claims consume a significant amount of judicial resources, diverting the time and energy of the judiciary away from processing good faith claims.

> "The most apparent effect of excessive litigation is the imposition of unnecessary burdens on, and the useless consumption of, court resources.

As caseloads increase, courts have less time to devote to each case. A lack of adequate time for reflection threatens the quality of justice. Second, long delays in adjudication create public dissatisfaction and frustration with the courts. Such delays also result in the unfortunate continuation of wrongs and injustices while the cases that would correct them sit on court calendars. Third, abusive litigation results in prolonged, repetitive harassment of defendants causing frustration and often extraordinary and unreasonable expenditures of time and money defending against unfounded claims.

"Defendants have a right to be free from harassing, abusive, and meritless litigation. Federal courts have a clear obligation to exercise their authority to protect litigants from such behavior. The Court may, in its discretion, place reasonable restrictions on any litigant who files non-meritorious actions for obviously malicious purposes and who generally abuses judicial process. These restrictions may be directed to provide limitations or conditions on the filing of future suits."

*Id.* at 1292–93 (quoting *Carter,* 678 F.Supp. at 1486) (internal citations omitted); *see also Winslow*, 17 F.3d at 315 ("The goal of fairly dispensing justice ... is compromised when the Court is forced to devote its limited resources to the processing of repetitious and frivolous [claims]." (quoting *In re Sindram*, 498 U.S. 177, 180 (1991))); *Dixon v. Rybak* 2006 U.S. Dist. LEXIS 74796, at *7 (D. Minn. October 13, 2006) (Magnuson, J.) (copy attached as Exhibit PP).

It has become apparent that for these Plaintiffs, an unsuccessful bid for elective office inevitably serves as mere prelude to an unsuccessful lawsuit blaming the news media for that elective failure.  Neither the courts nor the news media should be burdened by such frivolous litigation.  Accordingly, this Court should enjoin Plaintiffs from filing any other lawsuits that relate to the Moving Defendants' alleged failure to include the Plaintiffs in political coverage or debates conducted by the Moving Defendants in connection with any past or future election, unless Plaintiffs are represented by counsel

who will ensure (subject to Rule 11 penalties) that any claims presented in such a lawsuit has evidentiary support and is warranted by existing law or by a non-frivolous argument for extending, modifying, or reversing existing law or for establishing new law.

## Conclusion

For the foregoing reasons, this Court should enter an order dismissing all claims asserted by Plaintiffs against the Moving Defendants with prejudice for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted, and without prejudice for insufficiency of service of process.

In addition, based upon Plaintiffs' history of meritless litigation, this Court should enjoin Plaintiffs from filing any other lawsuits that relate to the Moving Defendants' alleged failure to include the Plaintiffs in political coverage or debates conducted by the Moving Defendants in connection with any past or future election, unless Plaintiffs are represented by counsel who will ensure (subject to Rule 11 penalties) that any claim presented in such a lawsuit has evidentiary support and is warranted by existing law or by a non-frivolous argument for extending, modifying, or reversing existing law or for establishing new law.

Dated:  January 26, 2011                    FAEGRE & BENSON LLP


                                            /s/ John P. Borger
                                            John P. Borger #9878
                                            Leita Walker #387095
                                            2200 Wells Fargo Center
                                            90 South Seventh Street
                                            Minneapolis, MN 55402
                                            (612) 766-7000


                                            Attorneys for Minnesota Public Radio,
                                            Multimedia Holdings Corporation, and
                                            Star Tribune Media Company LLC

fb.us.6029265.10